| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>        Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Defendant. | No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>        Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff,<br><br>        Plaintiff,<br><br>v.<br><br>CREDIT SUISSE AG; CREDIT SUISSE AG, NASSAU BRANCH; CREDIT SUISSE (LUXEMBOURG) SA; CREDIT SUISSE INTERNATIONAL; CREDIT SUISSE NOMINEES (GUERNSEY) LIMITED; CREDIT SUISSE LONDON NOMINEES LIMITED; and CREDIT SUISSE (UK LIMITED),<br><br>        Defendants. | Adv. Pro. No. 11-02925 (CGM) |

**MEMORANDUM DECISION
DENYING DEFENDANTS' MOTION TO DISMISS**

**A P P E A R A N C E S:**

*Special Counsel for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Windels Marx Lane & Mittendorf, LLP
156 West 56th Street
New York, NY 10019
By:  Howard L. Simon (on the papers)


*Attorneys for Defendants, Credit Suisse AG; Credit Suisse AG, Nassau Branch; Credit Suisse (Luxembourg) SA; Credit Suisse International; Credit Suisse Nominees (Guernsey) Limited; Credit Suisse London Nominees Limited; Credit Suisse (UK Limited)*
O' Melveny & Meyers LLP
7 Times Square
New York, New York 10036
By:  William J Sushon (on the papers)


**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion by the Defendants, Credit Suisse AG ("CS AG"); Credit Suisse AG, Nassau Branch ("CS Nassau"); Credit Suisse (Luxembourg) SA ("CS Luxembourg"); Credit Suisse International ("CS International"); Credit Suisse Nominees (Guernsey) Limited ("CS Guernsey"); Credit Suisse London Nominees Limited ("CS London"); and Credit Suisse (UK Limited) ("CS UK") (collectively, "Credit Suisse Defendants," "Credit Suisse," or "Defendants"), to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly consisting of BLMIS customer property.  The Defendants seek dismissal for failure to plead a voidable transfer and failure to plausibly allege that the Credit Suisse Defendants received BLMIS customer property.  The Defendants further argue that the Court should dismiss the complaint due to the affirmative defense of good faith under

Bankruptcy Code § 550(b) and that § 546(e) bars the trustee's claims. For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending. The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012. In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision. Defendants have not disputed personal jurisdiction.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding. *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), cert. denied sub nom. *Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on December 12, 2011. Compl., ECF[1] No. 1. Via the complaint ("Complaint"), the Trustee seeks to recover approximately $333[2] million in subsequent transfers made to the Defendants. *Id.* at ¶ 2. The subsequent transfers were derived from investments with BLMIS made by Fairfield Sentry Limited ("Fairfield Sentry"). Fairfield Lambda Limited ("Fairfield Lambda") and Fairfield Sigma Limited ("Fairfield Sigma") acted as foreign feeder funds, facilitating Swiss Franc and Euro investments, respectively, with BLMIS. *Id.* ¶ 4. Fairfield Sentry, Fairfield Lambda, and Fairfield Sigma (collectively, the "Fairfield Funds") were managed by Fairfield Greenwich Group ("FGG"). *Id.* at ¶¶ 3–4. The funds are referred to as "feeder funds" because substantially all of the assets were invested in BLMIS. *Id.*

Defendant CS AG is a corporate entity organized under the laws of Switzerland. *Id.* at ¶ 8. Defendant CS, Nassau Branch is a corporate entity organized under the laws of the Bahamas. *Id.* at ¶ 9. CS SA is a corporate entity organized under the laws of Luxembourg. *Id.* at ¶ 13. Credit Suisse International and CS UK are corporate entities organized under the laws of the United Kingdom. *Id.* at ¶¶ 14, 17. CS Guernsey and CS London are corporate entities organized under the laws of the Channel Islands. *Id.* at ¶¶ 15–16. Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry and related defendants to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion. *Id.* at ¶ 55. In 2011, the Trustee settled with Fairfield Sentry. *Id.* at ¶ 56. As part of the settlement, Fairfield Sentry consented to a judgment in the amount of $3.054 billion. Consent J., 09-01239-cgm, ECF No. 109. The Trustee then commenced a number of adversary proceedings

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 11-02925-cgm.
[2] The complaint in this case sought over $375 million in subsequent transfers. Following a settlement with Kingate Global and Kingate Euro, the Trustee dismissed all claims seeking recovery of Kingate-related subsequent transfers. The settlement reduced the amount sought by $42 million. Stip., ECF No. 101; Opp'n n.2, ECF No. 111.

against subsequent transferees like Defendants to recover the approximately $3 billion in missing customer property.

## Discussion

Defendants argue that the Trustee has failed to plead a voidable transfer and plausibly allege that the Credit Suisse Defendants received customer property. Defendants further argue that the Court should dismiss the complaint due to the affirmative defense of good faith under Section 550(b) and that Bankruptcy Code section 546(e) bars the trustee's claims. For the reasons set forth herein, the motion to dismiss is denied in its entirety.

**12(b)(6) Standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The claim is facially plausible when a plaintiff pleads facts that allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). In deciding a motion to dismiss, the Court should assume the factual allegations are true and determine whether, when read together, they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S. at 679. "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover the subsequent transfer of approximately $333 million made to the Defendants by the Fairfield Funds. Stip., ECF No. 101.

To properly plead a subsequent transfer claim, the Trustee need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The plaintiff must allege the necessary vital statistics—the who, when, and how much– of the purported transfers to establish an entity as a subsequent transferee of the funds. However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018).

While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. The Trustee is free to pursue any of the

immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 706–07 (11th Cir. 2005).

The Trustee pleaded the avoidability of the initial transfers (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the Fairfield Amended Complaint (the "Fairfield Amended Complaint") filed against Fairfield Sentry in adversary proceeding 09-01239. Am. Compl. ¶ 55, ECF No. 1 ("The Trustee incorporates by reference the allegations in that action as if fully set forth here."). Whether the Fairfield Amended Complaint properly pleads the avoidability of the initial transfer, is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

> Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions that extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded."

*Picard v. Cohmad Secs. Corp.,* (*In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

**Adoption by Reference**

Adoption by reference is governed by Rule 10 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 10(c). Rule 10(c) states: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." The district court has already found that adoption by reference of the entire Fairfield Amended Complaint is proper. *See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36

(S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

The Court will follow the district court's instruction. As was explained in *In re Geiger,* pleadings filed in the "same action" may be properly adopted by reference in other pleadings in that action. 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010). The Fairfield Amended Complaint was filed in the "same action" as this adversary proceeding for purposes of Rule 10(c). *Id.* Cases within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding. *In re Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . . . "); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019), (citing *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of the case doctrine applies across adversary proceedings within the same main case), *aff'd*, 943 F.3d 125 (2d Cir. 2019)); *Perez v. Terrastar Corp.* (*In re Terrastar Corp.*), No. 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d Cir. June 29, 2017); *Bourdeau Bros., Inc. v. Montagne* (*In re Montagne*), No. 08-1024 (CAB), 2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the same main case do not constitute different 'cases.'").

Some courts have worried that wholesale incorporation of a pleading can lead to "confusing and inconvenient" results. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47 (E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010). That is not a concern in these proceedings. Defendants, like many other subsequent transfer defendants in this SIPA proceeding, are aware of what has been filed in the other adversary proceeding in this SIPA liquidation. They routinely follow what is happening on a proceeding-wide basis. *See* Stip., ECF No. 87 (dismissing adversary proceeding based on consolidated extraterritoriality ruling).

Allowing the Trustee to incorporate the Fairfield Amended Complaint by reference does not prejudice the Defendants. On the other hand, dismissing this Complaint and permitting the Trustee to amend his Complaint to include all of the allegations that are already contained in the Fairfield Amended Complaint, would prejudice all parties by delaying the already overly prolonged proceedings. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Rule 15 places no time bar on making motions to amend pleadings and permits the amending of pleadings "when justice so requires.").

Through the adoption of the Fairfield Amended Complaint, the Trustee has adequately pleaded, with particularity, the avoidability of the initial transfers due to the Fairfield Funds' knowledge of BLMIS' fraud. (Fairfield Am. Compl. ¶¶ 314–18, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-1239, ECF No. 286); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("[T]he Court directs that the following adversary proceedings be returned to the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . .").

Defendants argue that the wholesale adoption of the Fairfield Complaint violates Federal Rule of Civil Procedure 8, which requires a "short and plain statement of [a] claim." Fed. R. Civ. P. 8(a)(2). The Court disagrees. Defendants have been following this and the Fairfield Sentry chapter 15 case and have been familiar with the allegations contained in the Fairfield Complaint for over a decade. Indeed, the Defendants have been privy to information that this Court has not seen. Fairfield Sentry has a complicated[3] corporate structure with various insiders many of whom are alleged to have had knowledge of BLMIS' fraud. The Trustee would need to re-plead nearly the entire Fairfield Complaint to demonstrate that the initial transfer is voidable. This Court has reviewed the Fairfield Complaint, in detail, on numerous occasions, and there is not much of that document that could omitted. Insisting that the Trustee re-allege all of the allegations contained in the Fairfield Complaint is unnecessary, burdensome, and duplicative.

**BLMIS Customer Property**

The Trustee has pleaded that, based on its investigations to date, "$256,629,645 of the money transferred from BLMIS to Fairfield Sentry was subsequently transferred by Fairfield Sentry to, or for the benefit of, [CS AG, CS Nassau, CS Luxembourg, CS Guernsey, CS London, or CS UK]," "$73,182,103 of the money [Fairfield Sigma received from Fairfield Sentry was transferred] to or for the benefit of, [CS AG, CS Luxembourg, CS International, CS Guernsey, CS London, or CS UK]," and "$3,485,823 of the money [Fairfield Lambda received from Fairfield Sentry was transferred] to, or for the benefit of, [CS AG, CS Nassau, CS Guernsey, CS London, or CS UK.]" Compl. ¶¶ 61–63, ECF No. 1.

---

[3] In a related adversary proceeding, *Picard v. Fairfield Greenwich Group, et al.*, 10-03800-cgm, the Court asked the parties to provide it with a chart showing the relationships of the Fairfield entities. The Court received three different charts. *See* Feb. 12, 2021 Hr' Tr. at 51:9-10, *Picard v. Fairfield Greenwich Grp., et al.*, 10-03800-cgm, ECF No. 158 ("I ask you all for charts and ended up with three.").

The exhibits attached to the Complaint provide the Defendants with the "who, when, and how much" of each transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); Compl. Exs. E, G, I, ECF No. 1 (indicating the dates and amounts of the transfers to the defendants); *cf. Picard v. Shapiro* (*In re BLMIS*), 542 B.R. 100, 119 (Bankr. S.D.N.Y. 2015) (dismissing for failure to plausibly imply that the initial transferee made any subsequent transfers.).

Defendants argue that the trustee's allegations are implausible because the complaint rests on a "mathematical impossibility." Def.'s Mem. 12, ECF No. 106. It is alleged that Fairfield Sentry received only $3 billion in transfers from BLMIS. Yet, if one were to total all of the alleged subsequent transfers across all of these BLMIS adversary proceedings, the Trustee has alleged that Fairfield Sentry paid out approximately $5 billion. Defendants have asserted that the money they received from Fairfield Sentry is untainted money that never was invested with BLMIS simply because the Trustee has filed complaints against other defendants who may have taken the money first.

To consider allegations made in dozens of other complaints filed by the Trustee in this SIPA proceeding is impractical and not required at this stage of the litigation. The other complaints have not been adopted by reference by the Trustee in this adversary proceeding and, as such, are not within the Court's power to consider on a Rule 12(b)(6) motion. *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) ("A district court, in deciding whether to dismiss a complaint under Rule 12(b)(6), is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference.") (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).

In order to determine how Fairfield Sentry spent the billions of dollars it received from BLMIS, this Court would need review financial documents in order to trace the monies to all of Fairfield Sentry's principals, insiders, creditors, and customers. Undoubtedly, the Court will trace and calculate how Fairfield Sentry spent its BLMIS (and any non-BLMIS) funds at a later stage of litigation. At this stage, the Trustee need only assert allegations that make it seem plausible that Defendants received BLMIS monies.

The Fairfield Complaint, which is incorporated by reference into this, alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS. (Fairfield Compl. ¶ 89); *see also* (Fairfield Compl. ¶ 91) ("From the beginning, to comport with Madoff's requirement for BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment decisions, but also the custody of its assets, to BLMIS."). The Complaint plausibly alleges that Fairfield Sentry did not have any assets that were not customer property. In this case, the Trustee is not seeking to collect $5 billion from the Credit Suisse Defendants. He is seeking only approximately $333 million, which easily could come from the $3 billion Fairfield received from BLMIS. If the Court were to accept Defendants' argument, it would need to do one of two things: 1) dismiss ALL of the Trustee's subsequent transfer claims in all of the adversary proceedings since the Court has no idea which transfers came from BLMIS customer property; or 2) hold a pre-discovery trial on all of the subsequent transfers actions to determine which transfers were made from the $3 billion of BLMIS customer property and which were not. The Court is simply not willing to have such a trial at this stage of litigation.

Taking all allegations as true and reading them in a light most favorable to the Trustee, the Complaint plausibly pleads that Defendants received customer property because Fairfield Sentry did not have other property to give. The calculation of Fairfield Sentry's customer

property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation.

Defendants also argue that the trustee has failed to plead facts that make a plausible inference that the subsequent transfers made to Credit Suisse consisted entirely of BLMIS customer property. Def.'s Mem. 13, ECF No. 106. As discussed *supra*, Rule 8(a) governs the Trustee's pleading burden and a short and plain statement that the pleader is entitled to relief is all that is required. Fed. R. Civ. P. 8(a). This standard of pleading is meant to ensure that the defendant has proper notice of the claim, while recognizing the limitations a plaintiff may have in setting out each detail of the claim before discovery. *In re Enron Corp.*, No. 01-16034 AJG, 2006 WL 2400369, at *4 (Bankr. S.D.N.Y. May 11, 2006). In a subsequent transfer claim, this means only that a defendant must be adequately apprised of the subsequent transfers that the Trustee seeks to recover. *Picard v. Cohmad (In re BLMIS)*, 454 B.R. 317, 340 (Bankr. S.D.N.Y. 2011) ("*Cohmad II*"). In the Complaint, the Trustee provides Defendants with the "who, when, and how much" of the purported transfers. *Cohmad II*, 454 B.R. at ¶¶ 332–40.

To the extent that Defendants are worried about the Trustee recovering more than he is entitled, such a fear is unfounded. There is no dispute that the Trustee is limited to "a single satisfaction" under § 550(a). 11 U.S.C. § 550(d). He may nevertheless pursue any and all subsequent transferees in order to achieve that satisfaction. § 550(a)(2) (providing that the Trustee may recover property from "any immediate or mediate transferee"). Calculation of whether the Trustee is fully satisfied is a factual finding to be made by this Court at a later stage of litigation.

**Section 546(e) Does Not Bar the Trustee's Claim to Recover Subsequent Transfers**

Defendants argue that they are entitled to the "safe harbor" defense, found in 11 USC § 546(e), to the Trustee's allegations concerning the Fairfield Funds transfers. Section 546(e) is referred to as the safe harbor because it protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract." 11 U.S.C. § 546(e). "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original). However, where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e) defense against recovery of those funds. *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

In light of the safe harbor granted under 11 U.S.C. § 546(e), the Trustee may only avoid and recover intentional fraudulent transfers under § 548(a)(1)(A) made within two years of the filing date, unless the transferee had actual knowledge of BLMIS's Ponzi scheme, or more generally, "actual knowledge that there were no actual securities transactions being conducted." *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *4 (S.D.N.Y. Apr. 15, 2013). "The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors. If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading securities for his account. In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the

full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd.* (*In re BLMIS*), 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021). "In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a fraudulent transfer knew of [BLMIS]'[s] fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

This Court has already determined that the Fairfield Amended Complaint contains sufficient allegations of Fairfield's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled [actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield Am. Compl. ¶ 320, *Picard v. Fairfield Inv. Fund Ltd.*, Adv. Pro. No. 09-1239, ECF No. 286 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Am. Compl. ¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at BLMIS"); Fairfield Am. Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS"); Fairfield Am. Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield Am. Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Am. Compl. ¶ 325 ("FG Bermuda had actual knowledge of the fraud at BLMIS");

Fairfield Am. Compl. ¶ 326 ("FG Advisors had actual knowledge of the fraud at BLMIS"); Fairfield Am. Compl. ¶ 327 ("Fairfield International Managers had actual knowledge of the fraud at BLMIS"); Fairfield Am. Compl. ¶ 328 ("FG Capital had actual knowledge of the fraud at BLMIS"); Fairfield Am. Compl. ¶ 329 ("Share Management had actual knowledge of the fraud at BLMIS"); Fairfield Am. Compl. ¶ 9 ("It is inescapable that FGG partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the result of the split strike conversion strategy (the 'SSC Strategy'). They knew BLMIS's equities and options trading volumes were impossible. They knew that BLMIS reported impossible, out-of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options counterparties. They knew their clients and potential clients raised numerous due diligence questions they would not and could not satisfactorily answer. They knew Madoff would refuse to provide them with honest answers to due diligence questions because it would confirm the details of his fraud. They knew Madoff lied about whether he traded options over the counter or through the exchange. They knew they lied to clients about BLMIS's practices in order to keep the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's direction.").

This Court determined that the Fairfield Amended Complaint is replete with allegations demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021). The district court determined that "those defendants who claim the protections of Section 546(e) through a Madoff Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme

are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims on this ground must be denied." *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12-MC-115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013) ("*Cohmad*"). And, "to the extent that a defendant claims protection under Section 546(e) under a separate securities contract," this Court was directed to "adjudicate those claims in the first instance consistent with [the district court's] opinion." *Id.*

Judge Rakoff has further clarified the inapplicability of the safe harbor to transfers such as those made to the Defendant. *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022) ("[*Cohmad*] simply concluded that, in circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) did not apply as a matter of its express terms."). Where Section 546(e) does not "embrace the initial transfer, the subjective knowledge of a subsequent transferee cannot retroactively render it applicable." *Id.* To the extent that the Defendant seeks to apply Section 546(e) to a transfer made in connection with a securities contract between it and the Fairfield Funds not involving BLMIS, this issue is "fact-intensive" and better addressed at a later stage of litigation. *Id.* *8.

This Court is powerless to reconsider this issue, agrees with the district court's reasoning, and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second Circuit. *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*), 773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the

protection offered by § 546(e)."). The Trustee's allegations in the Fairfield Amended Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

**The Safe Harbor Cannot be Used to Defeat a Subsequent Transfer**

Defendants argue that the safe harbor prevents the Trustee from avoiding the subsequent transfer between Fairfield Sentry and Credit Suisse because the initial transfers were made by, to, and for the benefit of covered entities and on account of the securities contract between BLMIS and Fairfield and between Fairfield and the Defendants.

The safe harbor is not applicable to subsequent transfers. "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e) (failing to include § 550 in its protections). Since there must be an initial transfer in order for the Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned. The safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not "avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018).

Defendants are not permitted to raise the safe harbor defense on its own behalf as a subsequent transferee. To the extent that Defendants attempt to argue whether the initial transfers between BLMIS and Fairfield fall under the safe harbor, this court has repeatedly acknowledged that the Trustee has sufficiently alleged that Fairfield had actual knowledge that Madoff was not trading securities and thus is not entitled to the safe harbor defense. *See Picard*

*v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021); *supra* 13–15.

**Good Faith**

Credit Suisse argues that this Court should dismiss the Trustee's complaint because the complaint establishes Defendants' "good faith" defense under section 550(b). "Good faith" is an affirmative defense, and such defenses are not proper to be brought on a motion to dismiss. Affirmative defenses are fact driven, require a factual analysis, and a presentation of evidence. *United Teamster Fund v. MagnaCare Admin Servs.*, LLC, 39 F.Supp. 3d 461, 475 (S.D.N.Y. 2014) ("Affirmative defenses 'often require consideration of facts outside of the complaint and thus [are] inappropriate to resolve on a motion to dismiss.'"). To bring a good faith defense during a motion to dismiss, the defendant must meet a stringent standard and show beyond a doubt that the plaintiff can prove no set of facts in support of his claim. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). Credit Suisse does not meet this standard and it does not provide any cases where good faith was successfully plead on a motion to dismiss. This Court will reject Credit Suisse's attempt to raise a good faith defense on a motion to dismiss just as was done in similar cases. *See Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC* (*In re Madoff Secs.*), No. 20-cv-02586 (S.D.N.Y. May 2, 2022); *Picard v. Banque Syz & Co., SA* (*In re Bernard L. Madoff Inv. Secs. LLC*), Adv. No. 11- 02149, ECF No. 167 (Main Case ECF No. 21741) (Bankr. S.D.N.Y. June 14, 2022).

<u>Conclusion</u>

For the foregoing reasons, Defendants' motion to dismiss is denied. The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to

chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**Dated: November 21, 2022**
**Poughkeepsie, New York**

/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**